IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**LINDA BOURGEOIS**                                                                 **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 3:11-CV-126 HTW-LRA**

**MISSISSIPPI VALLEY STATE UNIVERSITY**                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before this court is a motion to dismiss and/or for summary judgment [docket no.s 18, 20] filed by Defendant Mississippi Valley State University located in Itta Bena, Mississippi. Mississippi Valley State University ("MVSU") is a Mississippi Institution of Higher Learning created by the Mississippi Legislature and governed by the Mississippi Board of Trustees of the State Institutions of Higher Learning. Miss. Code Ann. §§ 37-107-1,[1] 37-127-1.[2] The plaintiff, Linda Bourgeois, a white female, is a former employee of that institution. By its motion, defendant MVSU challenges the legal/factual

---

[1] Mississippi Code Annotated § 37-101-1 provides in pertinent part that "state institutions of higher learning," including "The Mississippi Valley State College," "shall be under the management and control of a board of trustees to be known as the board of trustees of state institutions of higher learning."

[2] Mississippi Code Annotated § 37-127-1 reads:

A body politic and corporate is hereby created by the name of the "Mississippi Valley State College" to have perpetual succession, with power to contract and be contracted with, to receive by any legal method of transfer or conveyance, property of any description, to have, hold, and employ the same, to make and use a corporate seal, with power to break or change the same, and to adopt bylaws, rules and regulations for the government of its members, official agents, and employees. However, the name of said "Mississippi Valley State College" is hereafter changed to "Mississippi Valley State University," without interference with the rights, powers and prerogatives of said college which continue in all respects. Whenever the name "Mississippi Valley State College" appears, the same is construed to denote "Mississippi Valley State University."

1

sufficiency of plaintiff's claims submitted pursuant to the aegis of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.*, alleging race discrimination and retaliation. Although defendant MVSU strikes at plaintiff's case by way of the juridical allowances of Rule 12(b)(6)[3] as well as Rule 56[4] of the Federal Rules of Civil Procedure, this court need only conduct an analysis under Rule 56 since that approach allows the court to consider facts discussed beyond the pleadings as the parties have directed the court to do in their submissions in this case. Having studied these facts and the appropriate law, this court is persuaded to grant MVSU's motion for summary judgment for the reasons herein.

## I. Background

### A. First Charge of Discrimination

Linda Bourgeois is a white female. Complaint, ¶ 1. She began employment with MVSU in November 2007 as the Director of Office of Diversity. Complaint, ¶ 6. Plaintiff alleges that during her employment she was treated differently from her black peers in that: she did not have a secretary; she was kept under close surveillance; she was

---

[3]Rule 12(b)(6) of the Federal Rules of Civil Procedure states that "a party may assert. . . by motion. . .failure to state a claim upon which relief can be granted." This court notes that while Mississippi Valley State University's motion is titled "Defendant's Motion to Dismiss and/or for Summary Judgment," the motion does not cite or reference Rule 12 and only makes arguments regarding summary judgment. See Motion [docket no. 18] and Memorandum in Support [docket no. 19].

[4]Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

required to call the Interim Vice President before leaving her office; and on October 1, 2008, she received three written reprimands, one of which was for being away from her office. Complaint, ¶¶ 7-10. Relying upon these allegations, Bourgeois filed a charge of discrimination [docket no. 26-1] against MVSU with the Equal Employment Opportunity Commission ("EEOC")[5] on January 12, 2009, alleging race discrimination.[6] Complaint, ¶ 11.

**B. The MVSU Renaissance Efficiency Innovation Committee**

In 2009, in anticipation of budget cuts, MVSU formed the Renaissance Efficiency and Innovation Committee ("REIC") to study and make recommendations as to how budget cuts might be made. Affidavit of Frank Sowell, Director of Human Resources at MVSU, Exh. A to Motion. The committee consisted of a cross-section of administrators, staff and faculty from across the MVSU campus. Id. The purpose of the REIC was to identify budget cuts amounting to five percent (5%) over the three-year period of 2009 to 2012, while retaining as many services as possible. Id.

The REIC categorized its recommendations into three areas: "immediate and responsive" actions for the fiscal year 2009 to 2010; "immediate and tactical" actions for fiscal year 2010 to 2011; and "proactive and strategic" actions for the fiscal year 2011 to

---

[5]The EEOC, created by Congress in Title 42 U.S.C. § 2000e-4, is "empowered. . . to prevent any person from engaging in any unlawful employment practice as set forth in section 703 or 704 of [Title 42]," Title 42 U.S.C. § 2000e-5(a). Before one can file a suit for discrimination or retaliation, first, "[a] charge. . . shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred." Title 42 U.S.C. § 2000e-5(e)(1).

[6]The complaint says the charge was filed on January 9, 2009, but the actual charge of discrimination [docket no. 26-1] shows January 9, 2009, as the date the charge was signed and January 12, 2009, as the date charge was filed.

3

2012. Committee Recommendations, Exh. D to Response to Motion. The "immediate and responsive" recommendations focused upon a number of concerns, one being a suggestion to "merge [the] diversity and international programs positions."[7] Id. Persuaded by this recommendation, MVSU decided to merge the diversity and international programs. Affidavit of Sowell. Accordingly, MVSU merged Bourgeois' responsibilities as Director of Office of Diversity with the international program and consolidated her duties under Dr. Johnny Jones. Id. Dr. Jones was the Vice President of Student Affairs/Enrollment Management at the time. Memorandum Brief in Support of Motion, p.2. Prior to the merger of the diversity and international programs, Jones oversaw the diversity program as the supervising officer of Bourgeois'.[8] Deposition of Frank Sowell, p.7. After the merger, Jones' assumed direct responsibility for the diversity program. Id.

**C. Second Charge of Discrimination**

---

[7] MVSU informed the court during oral argument that in response to discovery requests it received correspondence in which Bourgeois stated to the committee that the departments of diversity and international programs should be merged. Bourgeois did not object to this statement.

[8] Sowell, Director of Human Resources at MVSU, testified in his deposition:

Q. . . . Ms. Bourgeois' vice president, who was that?

A. Johnny Jones

Q. And is he a vice president of one particular area or is he just the vice president over - -

A. He was. He was the vice president of student enrollment, diversity, and there's another title. There's another part of the title, but enrollment, diversity, and I think something else.

Deposition of Sowell at p.7. Jones terminated his employment relationship with the University in July 2011. Id. at p.8.3

4

Bourgeois and MVSU entered into a settlement agreement as to her 2009 charge of discrimination, but Bourgeois says MVSU never fully honored the agreement.[9] Bourgeois then filed a second charge of discrimination [docket no. 26-2] against MVSU on January 12, 2010, alleging race discrimination, age discrimination[10] and retaliation. The Civil Rights Division of the United States Department of Justice ("DOJ") issued a notice of right to sue in association with this charge on November 23, 2010.

**D. Third Charge of Discrimination**

On May 31, 2010, Bourgeois received a letter from MVSU informing her that her contract would not be renewed; thus, her employment would end at the expiration of her current contract which would expire on June 30, 2010.[11] Complaint, ¶ 14. On June 7, 2010, plaintiff responded by filing a third charge of discrimination [docket no. 26-3] against MVSU alleging retaliation for the non-renewal of her contract. Complaint, ¶ 15. On November 23, 2010, DOJ issued a notice of right to sue on the claims in Bourgeois' third charge.

**E. The Present Suit**

---

[9]A later charge of discrimination [docket no. 26-3], filed by Bourgeois on June 7, 2010, explains, "[t]he first charge was dismissed in exchange for a remedy; however, the remedy was never discussed."

[10]Bourgeois was seventy-one years of age at the time she filed her second charge of discrimination [docket no. 26-2].

[11]Based on the recommendations of merger of positions and duties, two other employees' contracts were also not renewed: Nora Taylor, Executive Director of Enrollment Management; and Adiah Curry, Recruiter in Office of Admissions. Affidavit of Sowell.

On February 16, 2011, within ninety days of receiving a notice of right to sue,[12] Bourgeois filed suit against MVSU in the Circuit Court of Hinds County, Mississippi, alleging violations of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.* [docket no. 1-1].[13] On March 1, 2011, MVSU removed the case from that state court to this federal forum [docket no. 1]. MVSU subsequently filed the motion to dismiss and/or motion for summary judgment [docket no.s 18, 20] which now occupies this court's attention.

## II. Jurisprudence

### A. Summary Judgment Standard

This court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record. . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P 56(c)(1). This court is not required to search the record beyond the materials cited. F.R.C.P. 56(c)(3).

---

[12]Title VII instructs that if the EEOC dismisses a charge or if within one hundred and eighty days from the filing of such charge, neither the EEOC nor Attorney General has filed a civil action or entered into a conciliation agreement to which the person aggrieved is a party, the EEOC or the Attorney General shall notify the person aggrieved, and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge. Title 42 U.S.C. § 2000e-5(f)(1).

[13]Apparently Bourgeois has abandoned the charge of age discrimination she made in her second charge of discrimination since she does not raise that claim in her complaint. Compare January 12, 2010 Charge of Discrimination [docket no. 26-2] and Complaint [docket no. 1-1].

6

The movant must demonstrate an absence of evidentiary support in the record for the non-movant's case. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)). Then the burden shifts to the non-moving party to produce evidence of the existence of a material dispute of fact requiring a trial. Wesley, 660 F.3d at 213 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). A party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (citing *Little*, 37 F.3d at 1075). Rule 56 mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (citing *Celotex*, 477 U.S. at 322).

This court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This court, in the absence of any proof, however, will not assume that the nonmoving party could or would prove the necessary facts. *Id.*

**B. *McDonnell-Douglas* Framework**

Bourgeois alleges race discrimination and retaliation pursuant to Title VII. Courts in this Circuit apply the modified *McDonnell Douglas* approach in race discrimination and retaliation cases brought pursuant to Title VII. *Vaughn v. Woodforest Bank*, 665

7

F.3d 632, 636 (5th Cir. 2011) (race discrimination) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (retaliation). Under this approach, Bourgeois first must make a prima facie case of discrimination/retaliation, which creates a presumption of discrimination/retaliation. *Vaughn*, 665 F.3d at 636. Then, MVSU must articulate a legitimate, non-discriminatory reason for not renewing Bourgeois' contract. *Id.* To meet its burden of production, MVSU must clearly set forth, through the introduction of admissible evidence, the reasons for not renewing Bourgeois' contract. *Id.* If MVSU articulates a legitimate, nondiscriminatory reason, the presumption of discrimination/retaliation disappears, and Bourgeois bears the ultimate burden of persuasion to offer sufficient evidence to create a genuine issue of material fact either (1) that MVSU's reason is not true, but is instead a pretext for discrimination/retaliation; or (2) that MVSU's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Bourgeois' protected characteristic or activity. *Id.*

**C. Race Discrimination**

Bourgeois alleges in her complaint that MVSU discriminated against her due to her race, Caucasian. Title VII makes it unlawful for an employer to fire an employee because of the employee's race. Title 42 U.S.C. § 2000e-2(a)(1).[14] To make a prima

---

[14]Title 42 U.S.C. § 2000e-2(a)(1) states:

(a) Employer practices. It shall be an unlawful employment practice for an employer--
  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . .

facia case of race discrimination, Bourgeois must show that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class under nearly identical circumstances. *Lee v. Kan. City S. Ry. Co*, 574 F.3d 253, 259 (5th Cir. 2009).

MVSU asserts, and this court agrees, that Bourgeois cannot meet the fourth element and, thus, cannot make a prima facie case of race discrimination. Contrary to her EEOC charge of racial discrimination, when asked about her race as the basis for her termination, Bourgeois eschewed racism as a basis for her disquietude. The colloquy between her and James M. Metz, attorney for MVSU, clearly confirms this point:

> Q. Now I understand in your complaint that you feel like you were non-renewed on the basis of your race, is that, could you - -
>
> A. No, sir. Not on my race.

Deposition of Linda Bourgeois, p.23, Exh. C to Motion. Apparently, Bourgeois is not of the opinion that she was treated less favorably because of her race.

Further, Bourgeois must demonstrate that she was treated less favorably because of her Caucasian race than were other non-Caucasian similarly situated employees. The court has been presented with no evidence of any similarly situated persons having been treated differently.

Bourgeois has failed to make a prima facie case. The court, nevertheless, will proceed through the *McDonnell Douglas* framework to consider the legitimate

nondiscriminatory reason offered by MVSU for its decision to not renew Bourgeois' employment contract.

MVSU has submitted the affidavit of Frank Sowell, the Director of Human Resources at MVSU at the time of Bourgeois' termination.[15] Exh. A to Motion. Sowell states that MVSU terminated Bourgeois as a result of following the REIC's recommendation to merge her position into another position, one of numerous staff adjustments recommended and followed in anticipation of budget cuts. Id. MVSU has stated a legitimate reason for its decision to not renew Bourgeois' employment contract. *See EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996) ("a reduction in force. . . is. . . a legitimate, nondiscriminatory reason for discharge").

Bourgeois has offered no evidence to suggest that MVSU's reason is pretextual. She does not allege that she had the qualifications to assume another position available at the time of the discharge. Bourgeois instead testified:

> Q. When your position was non-renewed, were there any other positions available? Did you apply for any other positions with the University?
>
> A. No, sir.
>
> Q. Were there any other available positions that you know of?
>
> A. I'm not aware of any in my - - that I would have been qualified for.

Deposition of Bourgeois, p.30.

Bourgeois has provided the court with no evidence to indicate that MVSU intended to discriminate in reaching its decision to eliminate her position. Bourgeois

---

[15]Sowell began employment with MVSU in May 2010, the same month MVSU notified Bourgeois that it would not renew her contract. Deposition of Sowell, p.6.

offers mere allegations and oscillating subjective beliefs, void of any evidentiary support, which are insufficient to create an inference of discriminatory intent. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (a plaintiff's subjective belief that she was not selected for a position based on her race is insufficient to create an inference of the defendant's discriminatory intent). This court, then, is persuaded that Bourgeois cannot establish a claim of race discrimination. Bourgeois concedes as much. That claim is, therefore, dismissed.

**D. Retaliation**

Bourgeois also alleges in her complaint that MVSU decided to not renew her contract in retaliation for the discrimination complaints she had made. A prima facie case of retaliation requires a showing by Bourgeois that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Kiki Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009).

Bourgeois has not established a causal link between the charges of discrimination she filed and MVSU's decision to not renew her contract. No admissible evidence even suggests that the REIC members were aware of the EEOC complaints filed by Bourgeois. Bourgeois has failed to make a prima facie case of retaliation.

Proceeding to MVSU's legitimate nondiscriminatory reason for allowing Bourgeois' contract to expire, as attested by Sowell, the non-renewal of Bourgeois' contract was predicated on the recommendation of the REIC. With respect to the REIC's process of arriving at recommendations, Bourgeois does not suggest what, if anything, the REIC could have done differently and even concedes that the REIC did

not act in a discriminatory manner in creating its recommendations. Bourgeois does not dispute the reasonableness of the REIC recommendations and concedes that the merger decreased MVSU's budget as intended.[16]

Bourgeois admits that her position was not the only one terminated as a result of the REIC recommendations. MVSU put forth Sowell to testify as its Rule 30(b)(6)[17] witness. Sowell's deposition, particularly the portion to which Bourgeois directs the court, and affidavit establish that MVSU followed several REIC recommendations to merge programs and staff and downsize staff resulting in termination of various positions. Affidavit of Sowell; Deposition of Sowell, pp.19-24. Such terminations included, in addition to Bourgeois' position of Director of Office of Diversity, the positions of Executive Director of Enrollment Management; Recruiter in Office of Admissions; Vice President of Economic Development; Special Assistant to the President; Assistant Vice President of Student Affairs, and one of three Dean positions. Id.

Bourgeois, however, contends that retaliation can be inferred by a jury because

---

[16]Sowell testified that eliminating Bourgeois' position saved MVSU approximately $67,500.00, including salary and benefits. Deposition of Sowell, p.31.

[17]Rule 30(b)(6) of the Federal Rules of Civil Procedure states:

(6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

MVSU chose to follow some REIC recommendations but not others and has not provided an explanation for its decisions. Sowell testified that he did not know why certain recommendations were followed and others were not. Deposition of Sowell, pp.24, 27. Sowell testified:

> Q. Now, the recommendations that were not follow[ed], is there any documentation, or e-mails, or anything like that, correspondence that would - - that we could look at that would show why those recommendations were not followed?
>
> A. The others?
>
> Q. Yes.
>
> A. I have not seen any document. I don't know if one exists.
>
> . . . .
>
> Q. For any of the recommendations that were not selected, does the University - - do you know if the University has any knowledge as to why they were not selected to be followed, those recommendations?
>
> A. Well, I'm sure the president has knowledge. Some of these recommendations, and I'm - - I mean, it's dangerous to speculate, but maybe, you know, feasibility wise it didn't make sense to do them, or economically it wasn't the most sound thing to do; but I was not part of those reviewing these and to decide which ones to and which ones not to do. I wasn't part of that.
>
> . . . .
>
> Q. So as you're sitting here today, like one of them is [to] eliminate the English education major position, you would have no knowledge - -
>
> A. I would have no knowledge as to why. . . we would have or did not do that.
>
> Q. Okay. Likewise, I guess, on the opposite end, on the ones that the University did select to follow, do you know why the University selected those instead of other ones?
>
> A. No, I do not know.

13

> Q. All right. Is there somebody at the University that would know that information?
>
> A. The reasoning why some were chosen and not others.
>
> Q. Yes, sir.
>
> A. I don't know. I mean, I would start with the president's office and make the request to the president.

pp.24, 27, 28-29. Notably, Bourgeois did not file a motion to compel additional discovery nor notice for deposition anyone from the President's office. Yet, from the above testimony, Bourgeois wants the court to opine that Sowell's claim of ignorance indicates MVSU had no reason other than retaliation to terminate Bourgeois. This court is not inclined to stretch logic beyond facts a proof-burdened plaintiff had every opportunity to develop. *Little*, 37 F.3d at 1075. Unable, then, to establish a causal link between her discrimination complaints and the non-renewal of her contract, Bourgeois has failed to make a prima facie case. MVSU has provided a legitimate nondiscriminatory reason for its decision to terminate Bourgeois, stating that it terminated Bourgeois on the basis of the REIC recommendations as part of a reduction in force.[18] Bourgeois has failed to show that she was subject to anything other than a reduction in force. No genuine dispute of material fact exists regarding Bourgeois's claim of retaliation.

### III. Conclusion

MVSU has shown that no genuine dispute as to any material fact exists. Upon analyzing these material, undisputed facts under the illumination of the applicable law, this court easily sees that MVSU is entitled to summary judgment pursuant to Rule 56.

---

[18] As noted above, a reduction in force is a legitimate, nondiscriminatory reason for non-renewal. *See EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996).

MVSU's motion to dismiss and/or for summary judgment [docket no.s 18, 20], accordingly, is granted. This court will enter a final judgment in accordance with the local rules.

**SO ORDERED, this the 30th day of April, 2012.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:11-cv-126 HTW-LRA
Memorandum Opinion and Order